UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

THOMAS WHEATON                                                                                    PLAINTIFF

V.                                                                  CIVIL ACTION NO. 4:11-cv-00121-CWR-FKB

COMMISSIONER OF SSA MICHAEL J. ASTRUE                                           DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation regarding the appeal by Thomas Wheaton of the Commissioner's final decision denying Wheaton's claim for social security benefits. In rendering this recommendation, the undersigned has carefully reviewed the administrative record regarding Wheaton's claims, including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ"); Plaintiff's Motion for Summary Judgment (Docket No. 14) and accompanying memorandum; and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Docket No. 16) and accompanying memorandum, as well as Plaintiff's Reply (Docket No. 18). For the reasons discussed in this report and recommendation, the undersigned recommends that this matter be remanded for an additional psychological evaluation and a physician evaluation.

HISTORY

The claimant filed for a period of disability, disability insurance benefits and supplemental security income on January 17, 2007, alleging disability beginning September 1, 2004. Wheaton's claims were denied initially and upon reconsideration. Pursuant to Wheaton's request for a hearing, a hearing was held on October 8, 2009. A supplemental hearing was held

1

on June 4, 2010. At the first hearing, Wheaton, who was represented by counsel, testified, as did a vocational expert. Docket 13-2, p. 96. At the second hearing, Jan Boggs, Ph.D., a consultative examiner, testified.

When rendering his subsequent decision, utilizing the requisite five-step sequential evaluation process, the ALJ determined that the claimant had severe impairments-gout, obesity, pain disorder, and borderline intellectual functioning, but that Wheaton had the residual functional capacity to perform medium work. Docket 13-2, pp. 14, 17.

On appeal, Wheaton argues that the ALJ erred at Step 3 of the process referenced *supra*, that the ALJ failed to apply proper legal standards to evaluate all of Plaintiff's severe impairments, that the ALJ did not properly establish residual functional capacity, that the ALJ improperly assessed credibility, and that the ALJ erred in determining Wheaton can perform past relevant work. Docket No. 15, pp. 2-3.

## MENTAL RETARDATION

At step 3, the ALJ rejected the opinion of Wheaton's expert that he is mentally retarded, instead concluding:

> The claimant's alleged mental retardation is not a medically determinable impairment. He failed to cooperate in psychometrics administered by Dr. Boggs. In the supplemental hearing, Dr. Boggs did not call the claimant's performance malingering, but he exhibited a lack of investment that invalidated the testing results. Dr. Boggs estimated that the claimant functioned at the borderline level of intellectual functioning based on his presentation and the claimant's work history.

Docket No. 13-2, p. 14. Kenneth Schneider, Ph.D., a psychologist and Wheaton's expert, had assigned 65 as Wheaton's Verbal IQ. Jan Boggs, Ph.D., a psychologist and the consulting expert, estimated Wheaton's IQ as between 71 and 79, but indicated that Wheaton did not put

2

forth sufficient effort for Dr. Boggs to make an accurate assessment. Dr. Boggs testified that at the start of the tests, Wheaton "was scoring even much lower than if he was borderline." Docket No. 13-2, p. 124.

Mental retardation is not considered in the same manner as other mental disorder listings. The following excerpt from 20 C.F.R. Part 404, Appendix 1, Section 12.00 describes the process as follows.

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

At issue in this case is whether Wheaton's IQ is low enough to put him within the listed impairment of mental retardation and whether he meets the 12.05(C) criteria. Appendix 1, Section 12.05 describes mental retardation as:

> **12.05** *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in

A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Dr. Schneider's assessment puts Wheaton squarely in a listed impairment as the IQ scores he obtained were: Verbal 65, Performance 64, and Full Scale 62. Additionally, Dr. Schneider diagnosed "Major Depressive Disorder, Recurrent, Severe Pain Disorder" in addition to "Mild Mental Retardation" and opined that Wheaton is "100%, totally, and permanently occupationally disabled...." Docket No. 13-7, p. 67. Dr. Boggs, who was unable to determine IQ, diagnosed "Depressive Disorder, NOS, Pain Disorder, Rule out Borderline Intelligence and Rule Out Reading Disorder." Docket No. 13-7, p. 71. Dr. Boggs opined that, "I did not see much indication that his condition is likely to improve during the coming year. As he presented

today, he would have difficulty handling on the job relationships. He was too preoccupied with his own discomfort and mildly agitated by it. This would not allow him to accommodate others." Docket No. 13-7, p. 71. Dr. Boggs also testified that: "I think it would help to have a physician address the impact of the pain...." Docket No. 13-2, p. 128.

Based on the foregoing, the Court cannot conclude that the record in this matter was fully developed or that the decision was supported by substantial evidence. See Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ ordered the examination by Dr. Boggs after receiving Dr. Schneider's assessment, but Dr. Boggs's assessment does not provide substantial evidence supporting the ALJ's decision and actually indicates that further evaluation is warranted. The undersigned recommends that this matter be remanded to the ALJ to order further psychological testing and evaluation by a physician concerning pain.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the19th day of April, 2012.


                                                s/F. Keith Ball_____
                                                UNITED STATES MAGISTRATE JUDGE